UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CITY OF KENNER**<br>　　　　　**Plaintiff,**<br><br>**VERSUS**<br><br>**NETFLIX, INC. AND HULU, LLC**<br>　　　　　**Defendants.** | **CIVIL ACTION NO. 21-445**<br><br>**SECTION:  "T"(3)**<br><br>**JUDGE GREG G. GUIDRY**<br><br>**MAG. JUDGE DANA DOUGLAS** |

### PLAINTIFF CITY OF KENNER'S MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Plaintiff, City of Kenner, with respect moves this Court to remand this matter to the 24th Judicial District Court of the Parish of Jefferson. Defendant Hulu, LLC ("Hulu") has removed this matter alleging federal jurisdiction under the Class Action Fairness Act on 2005 ("CAFA").

This case involves significant legal questions of first impression involving the regulatory schemes within Louisiana and their relationship to emerging technologies and methods to deliver video services to consumers. In at least two parallel actions, Hulu has attempted to remove cases to Federal Court in the Eastern District of Missouri (*City of Creve Coeur, Missouri v. Netflix, Inc., et al.*, 2019  WL 3604631 (E.D. Mo. Aug. 6, 2019)) and the Southern District of Illinois (*City of Fishers, et al. v. Netflix, Inc., et al.*, --- F. Supp. ---, 2020 WL 6778426 (S.D. In. 11/18/20). In both cases, the District Court Judges have ordered the cases be remanded to state court based on application of the comity doctrine, remanding these uniquely local issues back to state court. Hulu again tries the same maneuver, and this case should be remanded to state court for the same reasons.

The Supreme Court has repeatedly held that disputes concerning local jurisdictions collecting revenue belong in state court under the comity abstention doctrine. *See, e.g.*, *Dows v. Chicago*, 78 U.S. 108, 110 (1870); *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421–24 (2010).

1

"'An examination of [our] decisions,' [the] Court wrote more than a century ago, 'shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused [us] to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved un- impaired.'" *Levin*, 560 U.S. at 422 (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City,* 213 U.S. 276, 282 (1909)).

Just as the Louisiana action will turn on the reach of Louisiana's Consumer Choice in Television Act (La. R.S. § 45:1363, *et seq.*), previously-decided actions like *City of Creve Coeur*, 2019 WL 3604631, at *5, turned on Missouri's Video Service Provider Act, and *City of Fishers* turns on an interpretation of Indiana's Video Service Franchises Act. Pursuant to these state laws, both this action and the *City of Creve Coeur* and *City of Fishers* cases seek to require Defendants to pay a small percentage of their gross revenue to local governments in which they do business, and each raises a matter of first impression for their respective forum courts. As in Missouri and Indiana, the City of Kenner in this case alleges that state law requires Defendants to pay these fees, and Defendants argue it does not. The dispute squarely implicates Louisiana's state and local fiscal operations. As such, based on the comity doctrine this case should be decided by Louisiana's state courts, and the local nature of this dispute is an inescapable obstacle to removal.

It is a "basic principle of justice that like cases should be decided alike." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005); *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 419 (7th Cir. 2015) (citing *Martin*). There is no reason to afford Louisiana's state courts less deference to address local fiscal matters than Indiana or Missouri state courts in prior matters. In both cases, the defendants have invited "federal-court review of commercial matters over which [the states] enjoy wide regulatory latitude." *City of Creve Coeur*, 2019 WL 3604631, at *5 (quoting *Levin*, 560 U.S. at 431). Plaintiff respectfully request that this case be remanded to Louisiana state court.

I.      FACTUAL AND PROCEDURAL BACKGROUND

   A.      **City of Kenner's Claims under The Consumer Choice in Television Act.**

The City of Kenner filed this putative class action against Netflix, Inc. and Hulu, LLC (collectively "Defendants") for payment of a franchise fee authorized under the 2008 Consumer Choice for Television Act. La. R.S. § 45:1363, *et seq.*, ("the CCT Act").[1] Plaintiff represents a putative class defined as "All other Louisiana political subdivisions authorized to collect a video-service provider fee pursuant to the 2008 Consumer Choice for Television Act, La. R.S. § 45:1363 *et. seq.,* and where Defendants have provided or continue to provide video service."[2]

The CCT Act authorizes Louisiana political subdivisions or municipalities to collect a franchise fee on a provider of video services who deliver delivered programming over wireline facilities located partly in the public right-of-way. La. R.S. § 45:1363(6). The CCT Act defines "video service" as "video programming services provided through wireline facilities located at least in part in public rights of way without regard to delivery technology, including Internet protocol technology.  'Video service' shall not include any video programming provided by a commercial mobile service provider as defined in this Section or video programming provided as part of a service that enables users to access content, information, e-mail, or other services offered over the public Internet."  La. R.S. § 45:1363(14).

City of Kenner alleges the Defendants are "video service providers" within the meaning of the CCT Act, and are subject to the franchise requirements.[3] The Defendants have not previously sought franchise certificates or paid franchise fees. [4] In its Petition, City of Kenner seeks a declaratory judgment that Defendants are "video service providers" within the meaning of

---

[1] *See*, Petition for Damages, at Paragraphs 1 – 4. (Dkt. 1-1).
[2] Petition for Damages, at Paragraph 12. (Dkt. 1-1).
[3] Petition for Damages, at Paragraphs 25 – 26. (Dkt. 1-1).
[4] Petition for Damages, at Paragraphs 14 and 29. (Dkt. 1-1).

the CCT Act, and to review Defendants business records pursuant to La. R.S. § 45:1367(A).[5] City of Kenner also seeks to recover payments owed for the franchise fee under the CCT Act, or alternatively, for damages for unjust enrichment.[6]

### B.     Prior Relevant Rulings.

Defendant Hulu removed the case to this Court on March 3, 2021. (Dkt. 1). Defendants claim that the Court has both diversity jurisdiction and jurisdiction under the Class Action Fairness Act ("CAFA"). *Id.* Notably, this is at least the third case in which Hulu or Netflix have attempted to remove a lawsuit filed by municipalities for failure to pay these types of franchise fees.

In 2018, City of Creve Coeur, Missouri, filed a lawsuit against the same Defendants in Missouri state court based on Defendants' identical refusal to pay fees to Missouri municipalities under Missouri's version of the CCT Act, the 2007 Video Service Providers Act, § 67.2675, RSMo, *et seq.*, and local ordinances. Defendants removed both cases to Federal Court in the Eastern District of Missouri, arguing for federal jurisdiction under CAFA. The Eastern District Judge remanded the cases to Missouri state court under the comity doctrine. *City of Creve Coeur*, 2019 WL 3604631, at *5. Following that decision, Defendants sought leave to appeal to the Eighth Circuit, but the appellate court declined review of the petition. *City of Creve Coeur, Missouri v. DirecTV LLC*, No. 19-8016, 2019 WL 7945996, at *1 (8th Cir. 9/12/2019).

Next, the Cities of Fishers, Indianapolis, Evansville, and Valparaiso, filed suit on August 4, 2020, in Marion Superior Court seeking to impose franchise fees against Netflix and Hulu, among others, under Indiana's Video Service Franchise Act. *City of Fishers, et al. v. Netflix, Inc., et al.*, --- F. Supp. ---, 2020 WL 6778426 (S.D. In. 11/18/20). Netflix, Hulu, and other defendants removed that case to the Federal Court in the Southern District of Indiana alleging CAFA jurisdiction. *Id.*

---

[5] Petition for Damages, at Paragraphs 38 – 46. (Dkt. 1-1).
[6] Petition for Damages, at Paragraphs 47 – 53. (Dkt. 1-1).

The District Court Judge held "the comity considerations set forth by the U.S. Supreme Court in *Levin* warrant remand to state court." *Id.* at *6.

## II.   STANDARD OF REVIEW

The removing defendants carry the burden of showing the propriety of this Court's removal jurisdiction. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). "Because removal raises significant federalism concerns, the removal statute is strictly construed." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir.2008). Further, "any doubt as to the propriety of removal should be resolved in favor of remand." *Id.*

Establishing CAFA jurisdictional which requires the removing defendant to prove minimal diversity and an aggregated amount in controversy of $5,000,000 or more." *Preston v. Tenet Healthsystem Memorial Med. Ctr., Inc.,* 485 F.3d 793, 797 (5th Cir. 2007). Moreover, if the "number of members of all proposed plaintiff classes in the aggregate is less than 100" then CAFA jurisdiction cannot exist. 28 U.S.C. § 1332(d)(5)(B). "The removing defendant [to] prove by a preponderance of the evidence that the amount in controversy equals or exceeds the jurisdictional amount." *Id.* (quoting *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993)). "[A] defendant seeking to sustain removal may follow either of two tracks: (1) Adduce summary judgment evidence of the amount in controversy, or (2) demonstrate that, from the class plaintiffs' pleadings alone, it is 'facially apparent' that CAFA's amount in controversy is met." *Id.* at 863.

## III.   LAW AND ARGUMENT

This case presents a significant legal question of first impression in the state courts of Louisiana regarding the collection of revenue by local governments under the 2008 Consumer Choice for Television Act, La. R.S. § 45:1363 *et. seq.*, as applied to internet-based video service

5

providers. The putative class are all Louisiana political subdivisions or municipalities, and the unpaid tax revenue to the City of Kenner and the putative class is significant. For these reasons, this case will likely involve multiple writs and appeals, which are best suited for Louisiana state courts, who will be addressing the substantive questions arising from this case for the first time.

### A. The Comity Doctrine

The City of Kenner does not argue that Defendants fail to establish the traditional diversity elements under CAFA of minimal diversity or the amount in controversy. Instead, this case should be remanded under the comity doctrine like the prior cases of *City of Fishers* and *City of Creve Coeur, Missouri*. The United States Supreme Court encourages District Courts to avoid "interfer[ing]…with the fiscal operations of the state governments…in all cases where the Federal rights of the persons could be preserved unimpaired." *Levin*, 560 U.S. at 422. With the Supreme Court's caution in mind, even if Defendants have otherwise established the prerequisites of federal court jurisdiction, the comity doctrine requires remand. This matter of first impression about the proper interpretation of Louisiana state statutes impacting fiscal obligations owed by Defendants to Louisiana parishes, municipalities, and cities should be decided by Louisiana state courts.

The Supreme Court has long recognized that cases involving local systems of raising revenue should be decided by state courts. *See*, *Dows v. City of Chicago*, 78 U.S. 108, 110, (1870) (stating "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible."). The Supreme Court has consistently reaffirmed the comity doctrine, and district and circuit courts have followed.

In a case involving county property taxes, the Supreme Court explained why the doctrine carried such "peculiar force": there is a "delicate balance between the federal authority and state

governments," so "concomitant respect … should be accorded state tax laws in federal court." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 108 (1981). The Supreme Court noted "[t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts." *Id.* Accordingly, "the reasons supporting federal noninterference [with state fiscal matters] are just as compelling today as they were in 1937." *Id.* at 112-13 (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 527 (1981)).

In *Levin*, the Supreme Court reaffirmed this foundational principle, stating that the comity "doctrine reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Levin*, 560 U.S. at 421 (internal citations omitted). Likewise, the Court noted that its prior decisions demonstrate "a proper reluctance to interfere by prevention with the fiscal operations of the state governments," and that courts should "refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired." *Id.* at 422 (quoting *Boise City*, 213 U.S. at 282). The Court explained why this policy of federal noninterference is so critical:

> The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

*Id.* at 422 n.2 (quoting *Perez v. Ledesma*, 401 U.S. 82, 128 n.17 (1971) (Brennan, J., concurring

in part and dissenting in part)).

### B. The Tax Injunction Act Partially Codifies the Comity Doctrine

Congress enacted legislation partially codifying the comity doctrine in the Tax Injunction Act ("TIA"), which prohibits federal district courts from "enjoin[ing]" or "restrain[ing]" state tax matters so long as state courts offer a "plain, speedy and efficient remedy." 28 U.S.C. § 1341. The comity doctrine, however, is not limited to actions barred by the Tax Injunction Act. Analyzing the TIA, the Seventh Circuit observed "[t]he Supreme Court has told us to withhold decision even in situations to which the [Tax Injunction] Act does not apply" because that Act is just a "partial codification of the federal reluctance to interfere with state" fiscal matters. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 725 (7th Cir. 2011); *see also Levin*, 560 U.S. at 424 (confirming that the common law "comity doctrine is more embracive" than the Tax Injunction Act and "was not restricted by its passage").

### C. Application of the Confluence of Factors under *Levin*

The Supreme Court has held in *Levin* (and the District Court Judges in *City of Fishers* and *City of Creve Coeur, Missouri* have agreed) that defendants in this case seek federal intervention into matters over which the State of Louisiana "enjoys wide regulatory latitude." *Levin*, 560 U.S. at 431.

When determining whether the decline jurisdiction under the comity doctrine, the Supreme Court in *Levin* identified several relevant factors leading it to remand that case to state court. *Levin*, 560 U.S. at 431-32. First, like in *Levin*, Hulu invites federal review over a "commercial matter" over which the Louisiana legislature and municipalities traditionally enjoy wide regulatory latitude, particularly under the CCT Act and ordinances authorized by the Act. This case revolves around the reach of Louisiana's CCT Act, and its applicability to Defendants' respective businesses.

8

Second, City of Kenner's lawsuit does not implicate any fundamental right of Defendants attracting heightened judicial review. Third, Defendants are using this Court to aid them in improving their competitive position. Defendants' competitors have long been paying franchise fees to Plaintiff and other Louisiana municipalities, but Defendants have not. If Defendants later prevail in this Court on the merits, the Court would be judicially approving a continued competitive imbalance in the marketplace. The Court would, in essence, be deeming Defendants the Louisiana marketplace winners by judicial order rather than forcing Defendants to compete on the merits of their respective products. As the Supreme Court instructs in *Levin*, umpiring the desirability of competitive advantage is best left to local authorities. *Id.* at 431,

Fourth, Louisiana state courts are better positioned to rule on any potential constitutional or other violations[7] and provide an adequate remedy by possibly reshaping state statutes and ordinances if necessary because they are more familiar with the Louisiana's legislative preferences and because there are no apparent constraints on the state courts' remedial options. Plaintiffs have therefore demonstrated every *Levin* factor.

In a prior similar case, the Eastern District of Missouri, applying these *Levin* factors and citing other courts doing the same, held that the Missouri action against Hulu and Netflix, among other Defendants, should be remanded to state court under the comity doctrine. *City of Creve Coeur*, 2019 WL 3604631, at *5 (citing *Levin*). Defendants can articulate no relevant distinguishing factor that should lead this Court to rule differently. Likewise, in the Southern District of Indiana, the District Court Judge, applying the *Levin* factors, concluded that "these considerations 'in

---

[7] In the Indiana and Missouri litigation, Hulu and Netflix have argued that applying the franchise fee to them violates the respective state Constitutions. Plaintiffs anticipate that Defendants will make similar arguments in this case. The presence of a federal defense does not defeat application of the comity doctrine. *Levin*, 560 U.S. at 430-31 ("Although Defendant raises federal constitutional defenses as well, these do not involve 'any fundamental right or classification that attracts heightened judicial scrutiny' so as to justify the exercise of federal jurisdiction.")).

9

combination,' demand remand in 'deference to the state adjudicative process.'" *City of Fishers*, 2020 WL 6778426 at *5. Because this case mirrors the *Fishers* and *Creve Coeur* cases, "like cases should be decided alike." *Martin*, 546 U.S. at 139. Further, the District Court Judge in *City of Fishers* noted the absence of controlling precedent from Indiana Court's related to that state's version of the CCT Act made the outcome of that case more likely to affect the entire state's regulatory scheme as "the streaming services and new methods to deliver video services will continue to grow." *City of Fishers*, 2020 WL 6778426 at *5. Although these cases are non-precedential, their analysis of the Supreme Court's considerations is persuasive.

The Supreme Court has ruled that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 571 U.S 89, 89 (2014). Further, *Levin* warns statutes conferring jurisdiction, like CAFA, "should be read with sensitivity to 'federal-state relations' and 'wise judicial administration.'" *Levin*, 560 U.S. at 423. Finally, even if anticipated federal defenses are raised in subsequent pleadings, *Levin* informs that states are ofer better positioned than federal courts to provide remedial relief for a constitutional infirmity. *City of Fishers*, 2020 WL 6778426 at *6 (citing *Levin*, 560 U.S. at 428).

Under the comity doctrine, Louisiana state courts *should be* the courts construing this statute as a matter of first impression, particularly given the far-reaching impacts within this State of their decisions. "The federal balance is well served when the several States define and elaborate their own laws through their own courts and administrative processes and without undue interference from the Federal Judiciary." *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 826 (1997). In this case, where there is no existing state court guidance, and in light of the required sensitivity this Court must show to federal-state relations, Louisiana state courts should be given

the first opportunity to construe their own statutes. Under the comity doctrine, the Court should decline to exercise jurisdiction in the fiscal affairs of Louisiana local governments and municipalities and remand the case to state court.

## IV. CONCLUSION

As set forth above, the application of the CCT Act to internet-based video service providers is a significant question of first impression for Louisiana courts, and will only increase in significance as more market-share migrates from traditional cable-based providers to internet-based providers. The outcome of this case could affect every municipality and government in Louisiana, and influence Louisiana's regulatory schemes going forward. For these reasons, like the cases of *City of Creve Coeur, Missouri* and *City of Fishers, et al.*, application of the comity doctrine requires this case be remanded to allow this matter to be decided by Louisiana state courts.

Respectfully submitted:

**BRUNO & BRUNO, LLP**

*/s/ Joseph M. Bruno*
JOSEPH M. BRUNO, SR. (La. Bar # 3604)
DANIEL A. MEYER (La. Bar # 33278)
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 562-6775
jbruno@brunobrunolaw.com
dmeyer@brunobrunolaw.com


Malvern C. Burnett
Malvern C. Burnett, APLC
1523 Polymnia Street
New Orleans, LA 70130
Telephone: (504) 586-1922
Email: mburnett@burnettlawoffices.com

11

Joshua C. Joseph
Joshua Joseph Law Firm, LLC
1523 Polymnia Street
New Orleans, LA 70130
Telephone: (504) 208-9922
Email: joshuajosephlawfirm@gmail.com


Elkin L. Kistner, *Pro Hac Vice*
Bick & Kistner, P.C.
101 South Hanley Road, Suite 1280
St. Louis, Missouri 63105
Telephone: (314) 571-6823
Facsimile: (314) 727-9071
E-mail: elkinkis@bick-kistner.com


**CERTIFICATE OF SERVICE**

I hereby certify that on this April 2, 2021, a copy of the above and foregoing motion and attachments has been served by this Court's CM/ECF Filing Service, or via United States Mail, properly addressed, postage prepaid, or via electronic transmission, to all counsel of record.

　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Joseph M. Bruno*
　　　　　　　　　　　　　　　　　　　　　　　　Joseph M. Bruno